Slip Op. 25-44

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| U.S. ALUMINUM EXTRUDERS COALITION and UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION,<br><br>  Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>  Defendant,<br><br>and<br><br>KINGTOM ALUMINIO S.R.L.,<br><br>  Defendant-Intervenor. | Before: Lisa W. Wang, Judge<br><br>Court No. 23-00270 |

## OPINION AND ORDER

[Denying Plaintiffs' motion for judgment on the agency record and sustaining the International Trade Commission's negative preliminary determination.]

Dated: April 18, 2025

Enbar Toledano, Wiley Rein, LLP, of Washington, D.C., argued for Plaintiffs U.S. Aluminum Extruders Coalition and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union. With her on the brief were Robert E. DeFrancesco, III, Alan H. Price, and Laura El-Sabaawi.

Anthony C. Famiglietti, Attorney-Advisor, Office of the General Counsel, U.S. International Trade Commission, of Washington, D.C., argued for Defendant United States. With him on the brief were Dominic L. Bianchi, General Counsel, Andrea C. Casson, Assistant General Counsel for Litigation, and Michael K. Haldenstein, Attorney-Advisor.

Jordan L. Fleischer, Morris, Manning & Martin, LLP, of Washington, D.C., argued for Defendant-Intervenor Kingtom Aluminio S.R.L. With him on the brief were Brady W. Mills, Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Mary S. Hodgins, Eugene Degnan, Nicholas C. Duffey, and Ryan R. Migeed.

Wang, Judge: This action stems from a negative preliminary determination by the United States International Trade Commission ("Commission") in its antidumping duty ("AD") injury investigation of aluminum extrusions from the Dominican Republic. Aluminum Extrusions from China, Columbia, Dominican Republic, Ecuador, India, Indonesia, Italy, Malaysia, Mexico, South Korea, Taiwan, Thailand, Turkey, United Arab Emirates, and Vietnam, USITC Pub. 5477, Inv. Nos. 701-TA-695–698 and 731-TA-1643–1657 (Nov. 2023) (Prelim.) ("Public Views") at 5, PR 174. The U.S. Aluminum Extruders Coalition and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (collectively, "Plaintiffs") move for judgment on the agency record pursuant to CIT Rule 56.2. Plaintiffs challenge the Commission's preliminary determination of negligibility as to subject imports from the Dominican Republic.

For reasons discussed herein, Plaintiffs' motion for judgment on the agency record is denied.

## BACKGROUND

Plaintiff U.S. Aluminum Extruders Coalition is an association whose members include U.S. manufacturers of a domestic like product and was a petitioner in the underlying proceeding. Compl. ¶ 3, ECF No. 6. Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers

Court No. 23-00270                                                              Page 3

International Union is a certified union or recognized union or group of workers which is

representative of an industry engaged in the manufacture, production, or wholesale in

the U.S. of a domestic like product and was a petitioner in the underlying proceeding. Id.

On October 4, 2023, Plaintiffs filed a petition before the U.S. Department of

Commerce ("Commerce") and the Commission, alleging that aluminum extrusion

imports from subject countries caused or threatened to cause material injury to the

domestic industry. ECF No. 18-1 at I-2. On October 13, 2023, the Commission initiated

its preliminary investigation. Id. The Commission held a staff conference on October 25,

2023. Id. The Commission published its views on November 28, 2023. Id.

At the preliminary stage, the Commission must determine whether there is a

reasonable indication that a domestic industry is "materially injured or is threatened with

material injury" from the imports of subject merchandise.[1] 19 U.S.C. § 1673b(a)(1). As

part of this determination, the Commission must evaluate whether imports from a

specific country are above a 3% negligibility threshold. 19 U.S.C. § 1677(24)(A).[2] To do

---

[1] Subject merchandise is "the class or kind of merchandise that is within the scope of an investigation." 19 U.S.C. § 1677(25).

[2] Under 19 U.S.C. § 1677(24)(A)(ii), the Commission aggregates totals from countries whose individual percentages are less than 3%, but when totaled together would account for more than 7% of all merchandise entered into the U.S. during the negligibility period. The Dominican Republic is a beneficiary country exempt from aggregation of individually negligible imports for the purposes of a material injury analysis pursuant to 19 U.S.C. § 1677(24)(A)(iii) and the Caribbean Basin Economic Recovery Act of 1983, 19 U.S.C. § 2701.

Court No. 23-00270                                                                  Page 4

so, the Commission compares the quantity of subject imports from each subject country

as compared to the quantity of subject U.S. imports overall.

To calculate the quantity of subject imports, the Commission compiled U.S.

official import data for the period of investigation ("POI").[3] Public Views at 43. The

Commission explained that the official import statistics required certain adjustments

using importer questionnaire data to: (1) distinguish between subject and non-subject

imports from the People's Republic of China ("China"); (2) include in-scope imports from

certain additional Harmonized Tariff Schedule ("HTS") codes; (3) remove out-of-scope

merchandise reported by questionnaire respondents; and (4) remove imports by firms

certifying that they do not import aluminum extrusions using Customs records edited by

the U.S. Census Bureau. Preliminary and Final Staff Report to the Commission,

Aluminum Extrusions from China, Columbia, Dominican Republic, Ecuador, India,

Indonesia, Italy, Malaysia, Mexico, South Korea, Taiwan, Thailand, Turkey, United Arab

Emirates, and Vietnam, Inv. Nos. 701-TA-695–698 and 731-TA-1643–1657 (Nov. 2023)

(Prelim.) ("Staff Report") at IV-24 n.8, PR 170.

Based on this calculation for the preliminary determination, the Commission

found that subject imports from the Dominican Republic were below the statutorily

required 3% negligibility threshold, and thereby terminated its investigation.[4] Public

Views at 5.

---

[3] The POI was January 2020–June 2023.

[4] The Commission further found that there was a reasonable indication that the
domestic industry was materially injured by reason of aluminum extrusion imports from

Pursuant to 19 U.S.C. § 1516a(a)(1)(C), Plaintiffs appealed the Commission's preliminary determination on December 22, 2023. ECF No. 1. Defendant-Intervenor Kingtom Aluminio S.R.L. filed a motion to intervene, ECF No. 12, which was granted on January 22, 2024. ECF No. 16. Plaintiffs filed their CIT Rule 56.2 motion for judgment on the agency record on May 1, 2024. Pls.' Public Mot. for J. on Agency R. ("Pls.' Mot."), ECF No. 25. Defendant-Intervenor filed its opposition on August 29, 2024. Def.-Int.'s Br. in Resp. to Pls.' Mot. for J. on Agency R., ECF No. 33. The Commission filed its opposition on the same date. Mem. in Opp. to Pls.' Mot. for J. on Agency R. ("Def.'s Mem."), ECF No. 35. Plaintiffs filed their reply on October 16, 2025. Pls.' Reply in Supp. of Mot. for J. on Agency R. ("Pls.' Reply"), ECF No. 38. Oral arguments were held on January 30, 2025. ECF No. 44.

## JURISDICTION & STANDARD OF REVIEW

The court has jurisdiction over this action. 28 U.S.C. § 1581(c) ("The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A or 517 of the Tariff Act of 1930."). This action is commenced under section 516A(a)(1)(C) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(1)(C).

---

China, Columbia, Ecuador, India, Indonesia, Italy, Malaysia, Mexico, South Korea, Taiwan, Thailand, Turkey, United Arab Emirates and Vietnam, alleged to be sold in the United States at less than fair value and to be subsidized by the governments of China, Indonesia, and Mexico. Public Views at 5.

In their motion, Plaintiffs challenge the Commission's determination as unsupported by substantial evidence on the record, or otherwise not in accordance with law. See Pls.' Mot. at 13–14 (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). This reliance is incorrect because the substantial evidence standard governs final determinations made by the Commission, not preliminary negative determinations. Compare 19 U.S.C. § 1516a(b)(1)(B)(i), with 19 U.S.C. § 1516a(b)(1)(A).

Rather, as is the case here, a negative determination made by the Commission as to whether there is a reasonable indication of material injury, threat of material injury, or material retardation will be found unlawful only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(A); see also 19 U.S.C. § 1516a(a)(1)(C).

The difference between these two standards of review is of import here as the Federal Circuit has explained that the arbitrary and capricious standard is "highly deferential." In re Gartside, 203 F.3d 1305, 1312 (Fed. Cir. 2000). The substantial evidence standard, on the other hand, "is considered to be a less deferential review standard than 'arbitrary, capricious'" as it "asks whether a reasonable fact finder could have arrived at the agency's decision." Id.; see also Consol. Fibers, Inc. v. United States, 535 F. Supp. 2d 1345, 1352–54 (CIT 2008) (thoroughly explaining the difference between the arbitrary-and-capricious and substantial-evidence standards).

Thus, in reviewing the Commission's negative preliminary determination, the court "is not to substitute its judgement for that of the agency." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). The court

instead looks to whether there was a "rational basis in fact" for the Commission's determination. Ranchers-Cattlemen Action Legal Found. v. United States, 74 F. Supp. 2d 1353, 1368 (CIT 1999). The Commission's action is considered arbitrary and capricious when "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or made a finding that is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43.

Ultimately, the court considers whether there exists "a rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962). The court will not "supply a reasoned basis for the agency's action that the agency itself has not given," but it will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43 (quoting SEC v. Chenery Corp., 332 U.S. 194, 196 (1947); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)).

## DISCUSSION

At the preliminary determination stage, the Commission considers whether there is a "reasonable indication" that a domestic industry is "materially injured, or … is threatened with material injury" due to imports of the subject merchandise. 19 U.S.C. § 1673b(a)(1). As part of its analysis, the Commission must determine if imports from a subject country corresponding to a domestic like product account for less than 3% of all such merchandise imported into the U.S. during the most recent period for which data

are available preceding the filing of a petition. 19 U.S.C. § 1677(24)(A)(i). Imports that

account for less than 3% of all imports are deemed negligible and the investigation into

the subject country is terminated. 19 U.S.C. § 1673b(a)(1). Imports from beneficiary

countries under the Caribbean Basin Economic Recovery Act, such as the Dominican

Republic, are not subject to aggregation with imports from other countries under

investigation. 19 U.S.C. § 1677(24)(A)(iii).

Plaintiffs appeal: (1) the Commission's calculation that subject imports from the

Dominican Republic were negligible; (2) the Commission's determination that there was

no likelihood of contrary evidence to arise in the final phase which would warrant a non-

negligibility determination; and (3) the Commission's determination that subject imports

from the Dominican Republic did not have the potential to exceed the negligibility

threshold in the imminent future. Pls.' Mot. at 6–7, 11–12. Each issue is addressed in

turn.

I.      **The Commission's calculation of negligibility for imports from the
        Dominican Republic was lawful.**

The first issue is whether the Commission's calculation of negligibility as to

subject imports from the Dominican Republic was arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law.

Plaintiffs argue that the Commission's determination was unlawful because it

"only reached negligibility through extensive adjustment." Pls.' Mot. at 16. Plaintiffs

further argue that the determination was improper because the Commission adjusted

official import statistics, that on its face demonstrated non-negligibility over the 3%

threshold. Id. at 15–16. Plaintiffs claim that the Commission's adjustments inflated total

imports by adding a substantial volume of in-scope merchandise which came from one importer's questionnaire response, and that this response did not isolate subject merchandise because it "reported the total weight and value of downstream products containing aluminum extrusions as component parts" where such downstream products also included components other than in-scope aluminum extrusions. Id. at 16–17. Plaintiffs further contend that other importers reported difficulties isolating the weight and value of subject merchandise. Id. at 17.

The Commission responds that Plaintiffs' issues are not with its adjustments, but rather a "disagree[ment] with the Commission's methodology, the weight the Commission afforded the unadjusted official import statistics, and the need to adjust them with questionnaire data." Def.'s Mem. at 21. The Commission argues that its determination was based on a reasonable methodology, and that reliance on adjusted official import statistics supplemented by questionnaire data was warranted because the official import statistics alone were not the most accurate data. Id. at 18–20, 22.

In evaluating the Commission's negative preliminary determination, the Federal Circuit has explained that the court is to apply "traditional administrative law principles … when reviewing preliminary determinations in which [Congress] entrusted the decision-making authority in a specialized, complex economic situation to [the ITC]." Am. Lamb Co. v. United States, 785 F.2d 994, 1004 (Fed. Cir. 1986) (citation omitted). The court is limited and will only consider "whether there has been a clear error of judgment" under 19 U.S.C. § 1516a(b)(1)(A). Texas Crushed Stone Co. v. United States, 35 F.3d 1535, 1519–40 (Fed. Cir. 1994) (citing Citizens to Preserve Overton

Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (cleaned up)). In other words, the court is

to apply a "narrow judicial review standard" to "ascertain whether there was a rational

basis in fact for the determination." Am. Lamb, 785 F.2d at 1004.

Here, the Commission provided a rational basis in fact for its determination that

the unadjusted official import statistics were not the most accurate data and required

adjustments. Specifically, the Commission explained that the official import statistics did

not accurately capture the imports covered by the scope of the investigations, and that

adjustments were made to account for "imports under the non-primary HTS numbers,

out-of-scope merchandise reported in the primary HTS numbers that importers

indicated was not in-scope, [and] merchandise from importers who certified in their

questionnaire response that they had not imported in-scope merchandise." Public Views

at 44 n.188. The scope of these investigations included 21 primary and 116 non-primary

HTS codes. Id. at 15 n.18. Primary HTS codes included out-of-scope merchandise and

non-primary HTS codes included in-scope merchandise—subject merchandise entered

as parts of other products. Id. at 9–16. Imports from China which were subject to

existing AD and countervailing duty orders were also excluded from the scope. Id. at 14.

As a result, the Commission found that the HTS codes from the official import data did

not match directly with the scope of imports subject to these investigations, and thus

were not the most accurate data. Id. at 11, 15 n.18. Such a finding has a rational basis

in fact.

Further support for the Commission's authority is found in the Statement of

Administrative Action, which acknowledges circumstances in which the Commission

may have to "make reasonable estimates on the basis of available statistics" when

calculating import volumes. Uruguay Round Agreements Act, Statement of

Administrative Action ("SAA"), H.R. Doc. No. 103-316, vol. 1, 856 (1994), reprinted in

1994 U.S.C.C.A.N. 3773, 4188.[5] For example:

> The Commission may not have access to either complete questionnaire
> data or official import statistics conforming exactly to the Commission's like
> product(s) designations, particularly in preliminary investigations.
> Therefore, new section 771(24)(C) permits the Commission to make
> reasonable estimates on the basis of available statistics. For example, if
> available U.S. government import statistics concern a basket tariff provision
> that is broader than the like product designated by the Commission, the
> Commission may reasonably estimate a figure from the data available for
> the total imports corresponding to the like product.

Id.

Similarly, in this proceeding, the Commission was faced with an incomplete data

set and used its expertise to adjust official import statistics using questionnaire data.

This was a reasonable methodological choice with a rational basis in fact. PAO TMK v.

United States, Slip Op. 24-119, 2024 Ct. Intl. Trade LEXIS 119, at *6 (CIT Oct. 25,

2024) (finding that "[b]ecause Company A's imports represented an overwhelming

portion of the [subject country's] total, the agency found it reasonable to use its

purchases as the best estimate available for total in-scope imports from that country"

rather than official Customs data). Plaintiffs' disagreement with the Commission's

---

[5] The SAA is "an authoritative expression by the United States concerning the
interpretation and application of the Uruguay Round Agreements and this Act in any
judicial proceeding in which a question arises concerning such interpretation or
application." 19 U.S.C. § 3512(d).

reliance on questionnaire data to adjust the official import data is not sufficient to render the Commission's ruling arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See Nitrogen Sols. Fair Trade Comm. v. United States, 358 F. Supp. 2d 1314, 1324 (CIT 2005) ("The ITC reasonably chose to rely on the evidence developed by its staff, rather than [p]laintiff, and the [c]ourt will not disturb this decision."); Conn. Steel Corp. v. United States, 462 F. Supp. 2d 1322, 1330 (2006) ("Rather than requiring each piece of evidence to be found clear and convincing, the standard approved by American Lamb requires that the 'record as a whole' contain clear and convincing evidence that there is no material injury.") (citation omitted).

Plaintiffs aver that they are not challenging the Commission's methodology but that the Commission's adjustments "were facially flawed and subject to change." Pls.' Reply at 5–6. Such an argument is not that the Commission failed to consider an essential piece of evidence, but simply that Plaintiffs disagree with the Commission's choice of adjustments. Such an argument invites clear error by asking the court to undertake its own weighing of the evidence. See e.g., Trent Tube Div., Crucible Materials Corp. v. Avesta Sandvik Tube AB, 975 F.2d 807, 815 (Fed. Cir. 1992) (explaining that the court may not "reweigh the evidence or [ ] reconsider questions of fact anew"); Usinor v. United States, 342 F. Supp. 2d 1267, 1272 (CIT 2004) (explaining that "the court may not reweigh the evidence or substitute its own judgment for that of the agency"); Sensient Techs. Corp. v. United States, 28 CIT 1513, 1522 (2004) (rejecting the plaintiff's contention that "the information the ITC based [its determination]

on was flawed" because "the [c]ourt cannot re-weigh the evidence that was before the Commission").

Because the adjustments made had a rational basis in fact, the Commission's determination was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## II.      The Commission's determination that there was no likelihood for contrary evidence to arise in the final phase was lawful.

The next issue is whether the Commission's determination that there was no likelihood for contrary evidence to arise in the final phase of the investigations was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Plaintiffs challenge the Commission's findings based on the agency's adjustments to certain import data and the potential for scope changes in the final phase of the investigations.

### A.      Data Adjustments

Plaintiffs contend that the Commission's adjustments to the official import statistics indicate an "obvious potential for contrary evidence" demonstrating non-negligibility to arise in the final phase, and that the Commission's adjustments "could easily change during a final investigation when additional, and more accurate, data would be received." Pls.' Reply at 2; Pls.' Mot. at 11.

The Commission contends that there was no likelihood for contrary data to arise in the final phase and that it offered a satisfactory explanation as to why such data would not change its determination. Def.'s Mem. at 32.

At the preliminary phase, the Commission may terminate an investigation "only when (1) the record as a whole contains clear and convincing evidence that there is no material injury or threat of such injury; and (2) no likelihood exists that contrary evidence will arise in a final investigation." Am. Lamb, 785 F.2d at 1001. In American Lamb, the Federal Circuit explained that the Commission is to consider whether there is "a reasonable indication of injury, not a reasonable indication of need for further inquiry." Id. The Commission is to determine whether a likelihood exists for future data to demonstrate non-negligibility based on the information available at the time of the determination. Comm. for Fair Coke Trade v. United States, 28 CIT 1140, 1158 (2004) (citing 19 U.S.C. § 1673b(a)(1)); Ranchers-Cattlemen, 74 F. Supp. 2d at 1365 n.9; Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1313–14 (Fed. Cir. 2004). The "showing of likelihood [of injury] requires more than speculation, or the indication that something possibly might happen." Comm. for Fair Coke Trade, 28 CIT at 1163. The "barest clues or signs" do not justify making an affirmative preliminary determination. Co-Steel Raritan, 357 F.3d at 1311 (citation omitted).

Finally, if the Commission votes in the negative at the preliminary phase, it "must include at least a candid recognition of and response to inherent limitations." Nucor Fastener Div. v. United States, 791 F. Supp. 2d 1269, 1285 (CIT 2011) (citation omitted). However, the Commission's "explanations do not have to be perfect where the path of the agency decision is reasonably discernible." Am. All. for Hardwood Plywood v. United States, 392 F. Supp. 3d 1298, 1306 n.10 (CIT 2019).

Here, the Commission explained that additional adjustments based on further data were possible, but that those adjustments at the preliminary phase had the effect of decreasing the share of imports from the Dominican Republic. Public Views at 46 n.194. While acknowledging that questionnaire response coverage was low, the Commission used its expertise and discretion to adjust official import statistics using questionnaire data. Id. at 43 ("[T]he best information available … consists of official U.S. import statistics under the primary HTS numbers, adjusted by Commission staff to exclude out-of-scope merchandise and to include certain in-scope merchandise reported under other HTS numbers."). Similarly, while acknowledging the potential for over-inclusiveness in questionnaire response data, Staff Report at IV-1 n.3, the Commission explained that unadjusted official import statistics were similarly flawed as they consisted of primary HTS numbers "without any adjustments," which indicated that the data "may be over- or understated." See e.g., ECF No. 18-1 at IV-42, IV-48–50.

Plaintiffs are correct that the reasonable indication standard weighs against negative preliminary determinations. Am. Lamb., 785 F.2d at 1001. However, the court cannot entertain mere speculation as the "statute calls for a reasonable indication of injury, not a reasonable indication of need for further inquiry." Id. Here, Plaintiffs do not explain how or why importers would be able to provide more specific data reflecting in-scope merchandise in a final phase. In Committee for Fair Coke Trade, the court found that a plaintiffs' assertion that "more complete importers' questionnaire data in a final investigation would likely confirm that imports were increasing, without more, is not enough to compel continuation of the investigation." 28 CIT at 1163 (citation omitted).

Similarly, Plaintiffs' assertion that a possibility exists for additional, future data that could alter the Commission's finding of negligibility is not sufficient to compel continuation of the investigation. See id. ("A showing of likelihood requires more than speculation, or the indication that something might possibly happen."); Torrington Co. v. United States, 790 F. Supp. 1161, 1172 (CIT 1992) (citation omitted) ("[T]he Commission has wide discretion in choosing a reasonable analytical methodology."). As such, the Commission's negative determination, relying on adjustments to the official import statistics, is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### B.    Scope

Plaintiffs also contend that potential scope changes made by Commerce would undermine the Commission's determination that no likelihood of contrary evidence would arise in a final phase demonstrating non-negligibility. Pls.' Mot. at 18–19.

Plaintiffs argue that the Commission's adjustments "could easily change during a final investigation … after scope revisions had been made," and explain that "any changes to the scope [by Commerce] would likewise impact the Commission's calculations." Id. at 11, 19. The Commission contends that it explained its determination to refrain from speculating about future Commerce scope changes and made its findings on the basis of the scope at the time of the determination. Def.'s Mem. at 28.

When determining negligibility, the Commission uses "information available to it at the time of the determination." Co-Steel Raritan, 357 F.3d at 1313 (quoting 19 U.S.C. § 1673b(a)(1)). In Co-Steel Raritan, the Federal Circuit rejected a scope argument

similar to the one Plaintiffs make here, explaining that the Commission must make its determination "in light of the facts as they existed at the time when the Commission was required to vote." Id. at 1313–14; see also 19 U.S.C. § 1673b(a)(1).

The parties do not dispute that the Commission made its negligibility determination based on the scope as it existed at the time of the determination. 19 U.S.C. § 1673b(a)(1). Plaintiffs' contention that scope changes were "specifically forecasted" is unsupported by evidence. Pls.' Mot. at 10, 18. Plaintiffs do not explain what scope changes were specifically forecasted nor in what respect the Commission was required to incorporate such forecasted changes into their preliminary determination.

As such, the Commission's collection of data using the scope of the investigations at the time of the vote, and its refusal to speculate as to future scope changes, was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

### III.    The Commission's determination that imports from the Dominican Republic were not imminently likely to exceed negligibility was lawful.

The final issue is whether, as part of its analysis of whether there was a threat of material injury, the Commission's determination that subject imports from the Dominican Republic were not imminently likely to exceed the negligibility threshold was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

Plaintiffs contend that the Commission erred in determining that imports from the Dominican Republic were not imminently likely to become non-negligible, Pls.' Mot. at 4, because such imports demonstrated the potential to continue to grow and "imminently

account for more than 3 percent of total subject imports." Pls.' Reply at 16 (quoting 19

U.S.C. § 1677(24)(A)(iv)). Plaintiffs argue that the Commission's negligibility

determination should have included a consideration of "longer trends and broader data,"

and therefore lacks a rational basis in fact because of its use of "limited-coverage [and]

inflated data" in the context of the "meteoric rise" in imports from the Dominican

Republic. Id. at 17–18.

Specifically, Plaintiffs argue that: (1) imports from the Dominican Republic

increased by a substantial percentage between 2020 and 2022; (2) imports from the

Dominican Republic increased by a large percentage between 2022 and interim 2023;

(3) imports from the Dominican Republic grew at a faster rate than subject imports from

any other country in the three years preceding the investigation; (4) imports from the

Dominican Republic exceeded the 3% negligibility threshold in eight of the twelve

months of the negligibility period based on official import statistics; and (5) the

Commission's reliance on a single respondent from the Dominican Republic to gauge

import growth was improper. Pls.' Mot. at 11–12, 20–21.

The Commission contends that its determination was based on the best data

available, and that it weighed multiple factors in making its determination, including

production capacity, capacity utilization, arranged imports, and the subject country's

export orientation, rather than on the factors preferred by the Plaintiffs. Def.'s Mem. at

39–40.

For purposes of determining a threat of material injury, "the Commission shall not

treat imports as negligible if it determines that there is a potential that imports from a

Court No. 23-00270                                                        Page 19

[subject] country … will imminently account for more than 3 percent of the volume of all

such merchandise imported into the United States." 19 U.S.C. § 1677(24)(A)(iv). In

analyzing this issue, the Commission found:

> We find no indication on the record in this preliminary phase investigation
> that subject imports from the Dominican Republic are likely to imminently
> increase to that degree.… Based upon the trend in subject imports from the
> Dominican Republic as a share of total imports and the small size of the
> industry and its exports, among other evidence, we find that subject imports
> from the Dominican Republic do not have the potential to exceed the 3
> percent negligibility threshold in the imminent future. We therefore terminate
> the investigation with respect to imports from the Dominican Republic.

Public Views at 48.

In coming to this conclusion, the Commission considered several factors in its

analysis, including the rate of increase of import volume from the Dominican Republic

during the POI, the relative size of the industry, its limited production capacity,

decreasing use of arranged imports, and the production capacity constraints of the

largest producer from the Dominican Republic, Kingtom. Id. at 46–48. The Commission

also explained that the capacity utilization of Kingtom remained high. Id. at 47.

The Commission further explained that Kingtom would not be able to shift

imports to the U.S. such that imports from the Dominican Republic would be imminently

likely to be non-negligible because the majority of Kingtom's output already went to the

U.S. Id. The Commission analyzed and explained the factors that went into making its

determination and provided a rational connection between the facts found and the

choice made. See id. at 46 n.194 (citing Table IV-6 and Table F-1). As such, the court

Court No. 23-00270                                                                                            Page 20

finds that its conclusion was not arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law.

    While Plaintiffs contend that imports from the Dominican Republic were

imminently likely to become non-negligible at the time of the preliminary determination

because "the Dominican Republic's monthly import share exceeded [negligibility] in 8 of

the 12 months of the [POI]," Pls.' Mot. at 11, Plaintiffs relied on the official, unadjusted

import statistics that the Commission, within its discretion, found did not accurately

capture the imports covered by the scope of the investigations.

    In sum, Plaintiffs' arguments misapprehend the court's role in reviewing the

Commission's analysis and the preliminary determination based thereon. Despite

Plaintiffs' argument that their preferred analysis of the data and evidence is correct, the

court's inquiry begins and ends with whether the Commission has proffered a rational

connection between the evidence before it and its preliminary determination. In this

case it has.

**CONCLUSION**

    For the foregoing reasons, Plaintiffs' motion for judgment on the agency record is

**DENIED** and the Commission's preliminary determination is sustained. Judgment shall

be entered accordingly.

                                                            /s/      Lisa W. Wang
                                                            Lisa W. Wang, Judge

Dated: April 18, 2025
        New York, New York